# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NOLTON SHAWN THOMAS,  :<br>    Petitioner,  :<br>  :<br>    v.  :<br>  :<br>ROBERT SHANNON, THE DISTRICT ATTORNEY  :<br>OF THE COUNTY OF DELAWARE, AND THE  :<br>ATTORNEY GENERAL OF THE STATE OF  :<br>PENNSYLVANIA,  :<br>    Respondents.  : | CIVIL ACTION<br><br>NO. 07-2653 |

## Memorandum and Order

YOHN, J.                                                                                                        January ___, 2008

Presently before the court is petitioner Nolton Shawn Thomas's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Thomas asserts eight ineffective assistance of counsel claims.  After conducting a de novo review of the Report and Recommendation of Magistrate Judge Carol Sandra Moore Wells, and upon careful consideration of Thomas's objections to the Report and Recommendation and the parties' other submissions, I will dismiss the petition because it is procedurally barred.

**I.     Factual and Procedural Background**[1]

On the afternoon of May 13, 2004, agents from the Pennsylvania Bureau of Narcotics

---

[1] The procedural history is drawn largely from the state court docket (*see* Del. County C.P. Ct. Docket No. 3115-2004), the affidavit of probable cause attached to the criminal complaint (No. 283-04, May 13, 2004), and the affidavit of probable cause attached to the search warrant (No. 20044-04, May 12, 2004).

Investigation and police officers from the City of Chester observed the area around Thomas's home in Delaware County, located at 1300 Sun Drive, in preparing to execute a search warrant in the home.[2]  According to the affidavit of probable cause attached to the criminal complaint, the testimony of Officer Otis Blair (*see* Tr. of Proceedings 64-99, Dec. 1, 2005), and the testimony of Agent Kenneth Bellis (*see id.* at 100-129), the following events led to Thomas's prosecution. After Nicole DiSanto, Thomas's fiancée and codefendant, was arrested outside and in the rear of 1306 Sun Drive, Thomas left the house at 1300 Sun Drive, appeared to see the police with DiSanto, and then ran back into the house.  At that point, Agent Bellis made the decision to execute the search warrant.  After entering the house pursuant to the search warrant, agents saw Thomas standing on the steps inside.  He was arrested, and the police then searched the house and seized various drug distribution paraphernalia, a gun, money, and other items.  From a gutter located about two feet below the second-floor bathroom window, the police seized a plastic bag containing approximately twenty-eight grams of cocaine.

      After his arrest, Thomas was originally represented by Walter McHugh, who filed a motion to suppress, which was denied after a hearing.  Thomas later retained Daniel McCaughan (referred to throughout as "plea counsel").  On March 8, 2006, Thomas pled guilty before Judge Ann Osborne of the Delaware County Court of Common Pleas to one count of possession of a controlled substance with the intent to deliver in violation of 35 Pa. Cons. Stat. § 780-113(a)(30) (the "possession charge") and one count of being a felon in possession of a firearm in violation of 18 Pa. Cons. Stat. § 6105(a)(1) (the "firearm charge").  During the guilty plea colloquy, Thomas

---

[2] The search warrant was issued as the result of two controlled cocaine purchases made by a confidential informant.  One purchase was allegedly from DiSanto; the other was allegedly from Thomas.

2

affirmed that he was willing to accept as accurate the results of a lab test demonstrating that the bags found in the gutter of his residence contained 27.7 grams of cocaine.  (Tr. of Proceedings 17, 19, Mar. 8, 2006.)  He also agreed with the description of his actions as set out in the affidavit of probable cause.  (*Id.* at 17, 19.)  On the same date, Thomas was sentenced to five to ten years' incarceration on the possession charge and two years of probation on the firearm charge.

Thomas filed a motion to withdraw his guilty plea on April 7, 2006.[3]  On April 10, 2006, the court denied that motion as untimely.[4]  Thomas asserts that he directed plea counsel to file an appeal, but an appeal was not filed.  Thomas filed a pro se petition pursuant to the Post-Conviction Relief Act, 42 Pa. Cons. Stat. § 9541 *et seq.* ("PCRA"), on April 10, 2006, asserting the following grounds for relief:

> a. Trial counsel was ineffective for failing to request disclosure of, and thereafter investigating the Confidential Informant ("CI") in this case and/or presenting witnesses at the pre-trial suppression hearing and, as a result, counsel failed to adequately develop credible evidence at the pre-trial suppression hearing that the CI did not make the alleged controlled drug transaction from the Petitioner . . . .
> b. Trial counsel was ineffective for failing to investigate, and thereafter litigate, a pre-trial motion requesting discovery of the video footage from the surveillance camera at the Petitioner's residence . . . .
> c. The Petitioner's guilty plea was not voluntarily entered based upon trial

---

[3] Thomas himself wrote a letter to the trial court on March 10, 2006—two days after entering his guilty plea—requesting to withdraw his guilty plea.  On March 14, 2006, Judge Osborne's clerk notified plea counsel of his request.  Petitioner wrote again to the court on March 24, 2006.  On April 5, 2006, Thomas received letter from the court explaining that his letters had been forwarded to plea counsel.  On March 17, 2006, plea counsel wrote to the court indicating Thomas's desire to withdraw his guilty plea, and on April 7, 2006, plea counsel filed a formal motion to that effect.

[4] Plea counsel filed a motion for reconsideration of the court's denial of the motion to withdraw the guilty plea.  The court did not respond to that motion.

>counsel's ineffective assistance for improperly advising the Petitioner [regarding the effect of pleading guilty on the amount of prison time he would serve] . . . .

(Pet'r's Pet. Under the Post Conviction Relief Act 2-3.)[5] Thomas retained new counsel, Eugene Tinari ("PCRA counsel"), and a hearing on the petition was held on September 15, 2006.[6] Judge Osborne denied the PCRA petition on September 28, 2006, and Thomas did not appeal that denial.

Thomas is currently incarcerated at the State Correctional Institution in Fricksville, Pennsylvania. He filed the instant habeas petition on June 25, 2007, asserting six grounds for relief. On July 2, 2007, I referred this case to Magistrate Judge Wells for a report and recommendation. Thomas filed a motion for leave to amend the petition, adding two grounds for habeas relief, on July 23, 2007. Respondents answered the petition on September 5, 2007, and Thomas filed a response on September 24, 2007. On September 26, 2007, Magistrate Judge Wells granted Thomas's motion for leave to amend and issued the Report and Recommendation dismissing all eight claims. On October 18, 2007, Thomas filed his objections to the Report and Recommendation.

---

[5] Thomas also included the following assertion in his PCRA petition: "The failure to raise the claims earlier was the product of prior counsel's ineffectiveness, was not the result of any rational, strategic or tactical decision by counsel, and the ineffectiveness resulted in the conviction of an innocent individual." (*Id.* at 3.)

[6] During the hearing on Thomas's PCRA petition, Thomas pursued three ineffective assistance of counsel claims: that plea counsel failed to (1) request the disclosure of and investigate the identity of the confidential informant to whom Thomas allegedly sold cocaine (Tr. of Proceedings 10, Sept. 15, 2006); (2) request the videotape police allegedly seized from Thomas's home surveillance system (*id.* at 17); and (3) advise Thomas that he would serve all five years of the minimum recommended sentence (*id.* at 23, 27-28).

**II.     Standard of Review**

When a habeas petition has been referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), this court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). After conducting such a review, this court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* Magistrate Judge Wells found that Thomas's petition should be dismissed because all eight of Thomas's claims are procedurally defaulted.

In his objections to the Report and Recommendation, Thomas concedes that all of his claims are procedurally defaulted.[7] He argues, however, that he has established cause and prejudice sufficient to overcome the procedural bar and that a miscarriage of justice, based on evidence of actual innocence, requires that he be permitted to argue the merits of his petition.

The court addresses these issues de novo.


**III.    Discussion**

In his habeas petition, Thomas raises the following eight claims: plea counsel erroneously (1) advised that if Thomas accepted the guilty plea the government would not make the sentence mandatory, which would permit Thomas's release from custody before the expiration of the minimum sentence; (2) failed to object to the lack of an adequate factual basis

---

[7] Thomas did not file a direct appeal to the Pennsylvania Superior Court after the imposition of sentence. It is now too late to do so. Thomas also did not appeal the denial of his PCRA petition to the Pennsylvania Superior Court; it is now too late to do so or to file a new PCRA petition.

for the crimes to which Thomas pled guilty; (3) advised Thomas to plead guilty to the firearm charge, the elements of which the government could not prove; (4) advised Thomas to plead guilty to the possession charge, when the sentence to which Thomas agreed, pursuant to the plea agreement, exceeded the statutory maximum sentence; (5) failed to conduct any pretrial investigation before advising Thomas to plead guilty; (6) advised Thomas to plead guilty to charges of which he is innocent; (7) failed to file a requested direct appeal; and (8) failed to properly litigate the suppression motion. As noted above, Thomas has conceded that each claim is procedurally defaulted, but he asserts that the court should nevertheless reach the merits.

The doctrine of procedural default bars federal habeas relief when a state prisoner has defaulted on his federal claims in state court because of an independent and adequate state procedural rule. *See Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir. 1996). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). The doctrine of procedural default therefore ensures that state prisoners cannot evade the exhaustion requirement of 28 U.S.C. § 2254 by defaulting their federal claims in state court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Absent a showing that a procedural default should be excused, this court is barred from reviewing a petitioner's defaulted claims. Procedural default can be excused in only two ways:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750. Because Thomas's procedural default is not excused by either cause

and prejudice or by a miscarriage of justice, I will dismiss his petition.

### A.   Cause and Prejudice

The first method by which a petitioner's procedural default can be excused requires the petitioner to show both cause for his procedural default and prejudice. Thomas asserts that plea counsel's ineffectiveness in failing to file a direct appeal constitutes the requisite cause. However, because this ineffective assistance of counsel claim has never been presented to the state court, it is unexhausted and cannot constitute cause.

Before an ineffective assistance of counsel claim may be used to establish cause for a procedural default, the exhaustion doctrine requires that the ineffectiveness claim itself be fairly presented to the state court. *Id.* at 490. As the Supreme Court explained:

> [I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim. And we held in *Carrier* that the principles of comity and federalism that underlie our longstanding exhaustion doctrine—then as now codified in the federal habeas statute, *see* 28 U.S.C. §§ 2254(b), (c)—require that constitutional claim, like others, to be first raised in state court. "[A] claim of ineffective assistance," we said, generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."

*Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986)). Therefore, "a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Id.* at 450-51.[8] The petitioner has the burden of demonstrating cause. *See*

---

[8] In order to constitute cause, the alleged ineffective assistance must have violated the Sixth Amendment. *Carrier*, 477 U.S. at 488. Counsel is constitutionally ineffective when

7

*Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law . . . .").

Thomas has conceded that each of his eight claims is procedurally defaulted. He asserts that his claims are defaulted "due to counsel's failure to file [Thomas's] constitutionally guaranteed direct appeal" (Pet'r's Objs. 4-5), and that counsel was ineffective "for failing to file a requested direct appeal" to the Pennsylvania Superior Court (*see* Pet'r's Mot. for Leave to Am. 1). He argues that, "had Petitioner raised ineffective assistance of appellate counsel as an independent claim in the state courts, the underlying issues would not now be procedurally defaulted." (Pet'r's Objs. at 5.)[9]

Thomas's seventh claim—that plea counsel was ineffective for failing to file a direct appeal—must be addressed first because Thomas argues that counsel's failure to file this direct appeal is the is the cause as to why his other claims are procedurally defaulted. As he concedes, however, his seventh claim, like the others, is also procedurally defaulted. Thomas did not file a

---

counsel's performance is deficient under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Carrier*, 477 U.S. at 489; *Werts v. Vaughn*, 228 F.3d 178, 206 (3d Cir. 2000). Because I find Thomas's claims to be procedurally barred and the bar to be unexcused, I do not reach the issue of whether the alleged ineffective assistance violated Thomas's Sixth Amendment rights.

[9] Thomas made this same argument in his memorandum of law in support of his § 2254 petition:
> Petitioner asserts that the cause for the default of the instant claims are due primarily to the ineffective assistance of counsel. Petitioner's position is that he was denied the right to a direct appeal as counsel[] ignored his request to file a timely notice to the Superior Court of Pennsylvania.

(Pet'r's Mem. 35.)

direct appeal, and he did not properly raise the failure of his plea counsel to file an appeal in his PCRA petition.[10] Therefore, this ineffectiveness claim has never been presented to any Pennsylvania court. Furthermore, Thomas is now procedurally barred from ever presenting this claim to a Pennsylvania court because (1) the PCRA statute of limitations has expired,[11] and (2) the claim is waived and so could not be considered in a second PCRA petition.[12]

        Because Thomas's seventh claim is procedurally defaulted, it cannot constitute cause to

---

[10] Thomas asserted in his PCRA petition that "[t]he failure to raise the claims earlier was the product of prior counsel's ineffectiveness." (Pet'r's Pet. Under the Post Conviction Relief Act 3.) This statement is not, however, a fair presentation of his seventh claim to the state court. "A petitioner has fairly presented his claim if he presented the same factual and legal basis for the claim to the state courts." *Nara v. Frank*, 488 F.3d 187-197-98 (3d Cir. 2007) (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam)). A claim is fairly presented through "(a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* In his PCRA petition, Thomas did not allege that the failure to raise the claims earlier was a result of plea counsel's failure to file a requested direct appeal (as opposed to some other deficiency), and he provided no legal or factual support for the contention that plea counsel was constitutionally ineffective for failing to have filed a requested direct appeal. I note, as well, that PCRA counsel did not raise plea counsel's alleged failure to file a requested direct appeal at oral argument. *See supra* note 6.

[11] Thomas's conviction became final on April 7, 2006, thirty days after he entered his guilty plea. *See* Pa. R. App. P. 903(a). The one-year PCRA statute of limitations expired on April 7, 2007. *See* Pa. Cons. Stat. Ann. § 9545(b)(1), (b)(3). The PCRA statute of limitations is jurisdictional and no judicially created exceptions exist. *See Commonwealth v. Fahy*, 737 A.2d 214, 222 (Pa. 1999). Furthermore, it is an independent and adequate state ground precluding federal habeas review. *See Lines v. Larkin*, 208 F.3d 153, 165-66 (3d Cir. 2002) (finding the petitioner's claim to be procedurally barred when "the period for filing [a second PCRA] petition has long since run").

[12] To be eligible for relief under the PCRA, a petitioner has the burden of proving that, inter alia, the claim is not waived. 42 Pa. Cons. Stat. § 9543(a)(3). A claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." *Id.* § 9544(b). Waiver of a claim is an independent and adequate state procedural ground precluding federal habeas review. *See Neely v. Zimmerman*, 858 F.2d 144, 145 (3d Cir. 1988).

excuse the procedural defaults barring review of Thomas's other claims absent cause and prejudice as to this claim.  *See Carpenter*, 529 U.S. at 450-51.  Thomas has not asserted cause for the procedural default as to this claim.  Neither his memorandum of law in support of his habeas petition nor his objections to the Report and Recommendation state a reason for Thomas's failure to present a claim of ineffectiveness of plea counsel in failing to pursue a direct appeal to the Pennsylvania state courts.  Therefore, cause and prejudice sufficient to overcome the procedural bar are not present, and I cannot reach the merits of Thomas's habeas petition unless he has shown a miscarriage of justice.

### B. Fundamental Miscarriage of Justice

The second manner in which a petitioner's procedural default can be excused—the "fundamental miscarriage of justice" exception—"will apply only in extraordinary cases, i.e., 'where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Werts*, 228 F.3d at 193 (quoting *Carrier*, 477 U.S. at 496).  Actual innocence "means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  It "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."  *Id.* at 329.  To establish such a claim, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995).  In evaluating the new evidence, "the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable

reliability of that evidence." *Id.* at 332.

Magistrate Judge Wells recommended dismissing the habeas petition because, in addition to not having shown cause and prejudice sufficient to overcome the procedural bar, Thomas did not present new, reliable evidence of his innocence. Thomas asserts in his objections, however, that "Petitioner *did* submit new evidence to support his claims of innocence. For some reason the Magistrate never considered it." (Pet'r's Objs. 7.) Thomas's new evidence is in his file (and he submitted copies with his objections). Because review of the Report and Recommendation is de novo, I will consider the evidence. I find the evidence insufficient, however, to show that no reasonable juror would have found the defendant guilty.

Petitioner submitted as new evidence affidavits of Blair Jones, Yvonne Thomas, and Lori Hammond. Jones, Thomas's niece, asserted that she was walking up the alley that runs adjacent to Thomas's house with two men, one of whom had reported seeing the police parked out front. As they parted, Jones claims she heard one of the men say to the other, "Get rid of it, throw it on the roof." Thomas argues that Jones "offered the most logical explanation as to why the drugs were found in the gutter of Petitioner's residence." (Pet'r's Objs. 8.)

Yvonne Thomas, petitioner's mother, explained in her affidavit what happened inside petitioner's residence when the police arrived to execute the search warrant. Petitioner argues that "her affidavit makes clear that at no time before the police entered the home did Petitioner run up the stairs to discard any drugs" (Pet'r's Objs. 8), which presumably would have been necessary in order for him to have thrown the drugs out the window as the government suggests he did. Thomas also argues that his mother's affidavit "established that Petitioner's home was equipped with a video security system which the arresting officers claimed did not exist." (*Id.*)

The video allegedly would have shown violations of the knock and announce rule leading to suppression of evidence.[13] (*Id.* at 8–9.)

In her affidavit, Hammond, petitioner's sister, explained that she was unable to open Thomas's bathroom window on the morning the search warrant was executed. Hammond asserts that DiSanto told her Thomas's bathroom window had been screwed or nailed shut. According to Thomas, "the affidavit of Lori Hammond dispels the theory that Petitioner was able to open the window and throw drugs out of it." (Pet'r's Objs. 8.)

These affidavits are not, however, *reliable* new evidence establishing Thomas's innocence. The affidavits were sworn on July 25 and 25, 2007, over eighteen months after the motion to suppress was litigated and over a year after the motion to withdraw the guilty plea and PCRA motions were filed. Contrary to the assertions in the affidavits, a police officer reported that "he observed the window open upon his arrival into the bathroom." (Bureau of Narcotics Investigation & Drug Control Investigative Report, Case No. 20044-04, May 14, 2004.) A reasonable juror could disbelieve the evidence offered by Thomas's mother, sister, and niece and choose to believe the police officers who recovered the cocaine from the gutter.

After considering "the timing of the submission" and "the likely credibility of the affiants," *Schlup*, 513 U.S. at 332, I find the new evidence unreliable. Thomas has thus not met

---

[13] Regardless of whether the evidence obtained during the search of the residence would legally have been admissible, it is probative for purposes of the miscarriage of justice exception. *See Schlup*, 513 U.S. at 328 ("The habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) . . . .").

his burden of showing that no reasonable juror would have found him guilty.[14]  Therefore, his claims of ineffective assistance of counsel cannot pass through the *Schlup* gateway to establish a fundamental miscarriage of justice through actual innocence.  For this reason, and because of Thomas's inability to overcome the procedural bar by showing cause and prejudice, I will dismiss Thomas's habeas petition.

## IV.  Conclusion

For the foregoing reasons, Thomas has not demonstrated either cause and prejudice or a miscarriage of justice based on actual innocence.  Therefore, his procedurally defaulted claims cannot be heard in this court.  For that reason, I will approve and adopt the Report and Recommendation and will dismiss the petition.

I must now determine if I should issue a certificate of appealability.  A court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  According to the Supreme Court,

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the

---

[14] Thomas also provided photographs of 1300 Sun Drive and the surrounding area, including the alleged locations of the agents and officers on May 13, 2004, of DiSanto's arrest on that date, and of Thomas's home surveillance cameras and monitor.  Thomas does not address the probity of these photographs in his memorandum of law, and I do not find them or Thomas's notations on them either reliable or relevant to the question whether Thomas is actually innocent of the possession and firearm charges.

district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Thomas has conceded that his claims are procedurally barred, and reasonable jurists could not disagree about his failure to show either cause and prejudice or a miscarriage of justice. Therefore, the court will not issue a certificate of appealability.

   An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOLTON SHAWN THOMAS,  :
    Petitioner,  :
                                                 :      CIVIL ACTION
    v.  :
                                                 :      NO. 07-2653
ROBERT SHANNON, THE DISTRICT ATTORNEY  :
OF THE COUNTY OF DELAWARE, AND THE  :
ATTORNEY GENERAL OF THE STATE OF  :
PENNSYLVANIA,  :
    Respondents.  :

## Order

YOHN, J.

      And now, this _____ day of January 2008, upon careful consideration of Nolton Shawn Thomas's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner's amendment thereto, the government's and petitioner's responses, the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, and petitioner's objections thereto, it is hereby ORDERED that:

    1.    Petitioner's objections are OVERRULED.

    2.    The Report and Recommendation of United States Magistrate Judge Carol Moore Sandra Wells is APPROVED and ADOPTED.

    3.    The petition for writ of habeas corpus is DISMISSED.

    4.    The Clerk shall CLOSE this case for statistical purposes.

5.       Petitioner having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability.

                                                        _____s/ William H. Yohn Jr._____
                                                        William H. Yohn Jr., Judge